IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**FRANZ P. BUCKREM,**

    **Plaintiff,**

vs.                                   Case No. 4:06cv429-WS/WCS

**FREDERICK B. DUNPHY,**
**and TENA M. PATE,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Both Defendants filed answers to the *pro se* Plaintiff's amended complaint, doc. 12, and both answers, docs. 15 and 16, were simultaneously filed as motions for summary judgment. Docs. 15, 16. Plaintiff was advised of his obligation to respond to the motions pursuant to Rule 56, doc. 17, and he has responded. Doc. 20.

**Allegations of the complaint**

Plaintiff has raised both due process and Eighth Amendment claims. Doc. 12. His claims concern a 2004 parole decision to deny his effective parole release date (EPRD). Plaintiff contends that Defendants ignored prior mitigating facts and recommendations. *Id.* Specifically, Plaintiff alleges that the Defendants rejected a

psychological evaluation and facts that were previously favorably relied upon in 2002 and 2003.  *Id.*  Plaintiff contends the Defendants produced fraudulent information to prevent him from filing for clemency and blocking his future parole consideration.  *Id.*  Plaintiff's next parole consideration hearing is set for five years in the future, in January of 2009.  Plaintiff seeks expungement of the allegedly fraudulent information, an immediate parole hearing, and prosecution of "charges" against the Defendants.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

On July 2, 1975, Plaintiff was convicted of first degree murder and assault with intent to commit murder in the first degree.  Doc. 15, pp. 2, 10; ex. A (doc. 15-2, p. 2.)[1] On August 15, 1975, Plaintiff was sentenced to death.  Doc. 15, pp. 2, 10-11; ex. A.  In 1979, however, Plaintiff was re-sentenced to life in prison with a 25-year minimum mandatory term for the first degree murder conviction and a consecutive 15 year term on the assault conviction.  Doc. 15, pp. 2, 11; ex. B.

At Plaintiff's parole hearing on January 13, 1999, the Commission established Plaintiff's presumptive parole release date for April 20, 2012.  Doc. 15, pp. 2, 11; Plaintiff's appendix 1-2 (doc. 13, pp. 4-5).  The following year, the Parole Commission met on October 4, 2000, and made no change to Plaintiff's presumptive parole release

---

[1] Document 15, Defendant Dunphy's answer, is virtually identical to document 16, Defendant Pate's answer.  Thus, all references will be to document 15 and its exhibits.  Because the Plaintiff is *pro se* and does not have access to the court's electronic document database, the citations are first to the paper document and then, as needed, in parenthesis with the electronic citation.

Case No. 4:06cv429-WS/WCS

date; nor was a change recommended by the hearing examiner. Doc. 15, pp. 2, 11; Plaintiff's appendix 3 (doc. 13, p. 6). Likewise, when the Commission considered Plaintiff's case again on August 7, 2002, no change was made or recommended to the presumptive parole release date. Doc. 15, pp. 2, 11; Plaintiff's appendix 4 (doc. 13, p. 7).

At the Commission meeting on March 12, 2003, Plaintiff's presumptive parole release date was reduced by 96 months, thus, moving up his tentative release date to April 20, 2004. Doc. 15, pp. 2, 11; Plaintiff's appendix 5 (doc. 13, p. 8). Notably, the hearing examiner had only recommended a 24 month reduction, but the Commission moved the presumptive parole release date forward 96 months (to April 4, 2004) and also recommended to the Department of Corrections that Plaintiff "be placed in the work release program." Plaintiff's appendix 5 (doc. 13, p. 8).

The Commission met on February 25, 2004, and acting as a "panel of the Commission failed to make a positive finding as required by Section 947.18, Florida Statutes, and referred Plaintiff's case to the full Commission for extraordinary review." Doc. 15, pp. 3, 11; Plaintiff's appendix 6 (doc. 13, p. 9). At the extraordinary review on March 17, 2004, the Parole Commission decided not to authorize Plaintiff's effective parole release date and suspended his presumptive parole release date of April 20, 2004. Doc. 15, pp. 3, 11; Plaintiff's appendix 7-9 (doc. 13, pp. 10-12). In addition, the Commission set Plaintiff's next parole hearing for five years in the future. Doc. 15, pp. 11-12; Plaintiff's appendix 10.

On April 28, 2004, Defendants, as members of the Parole Commission, issued an Amended Extraordinary Review order. Doc. 15, pp. 5-7. The order is identical to the

Case No. 4:06cv429-WS/WCS

original Extraordinary Review order in substance, differing only in two respects.  First, it notes that the Commission meeting was "held April 28, 2004 Nunc pro tunc March 17, 2004.  *Cf.* Plaintiffs' appendix 7, 10 (doc. 13, pp. 10, 13).  Second, in the section setting forth the basis for scheduling Plaintiff's next parole hearing five years in the future, reason five, "mental health concerns," was omitted.  *Cf.* Plaintiffs' appendix 7, 10 (doc. 13, pp. 10, 13).[2]

The Commission's Amended Extraordinary Review Order states that the Commission could not find that there was a reasonable probability that Plaintiff would live within the confines of the law if released on parole and, thus, concluded he should not be released on parole at that time.  Doc. 15, pp. 5-7.  The review order, quoted in document 15, pp. 5-7,[3] first explains the circumstances of Plaintiff's conviction, notes six other criminal charges[4] placed against Plaintiff between 1969 and 1975, and reports six disciplinary reports that were processed against Plaintiff between 1978 and 1993.  Doc. 15, pp. 4-5.  The Commission found that the disciplinary reports and his "failure to abide

---

[2] In the original extraordinary review, six reasons were listed for finding it "not reasonable" to expect that Plaintiff would be granted parole within five years and setting his next parole review for 2008: (1) firearm used in the offense; (2) multiple victims; (3) trauma to the surviving victim; (4) vulnerability of the one victim, 17 year old girl; (5) mental health concerns; and (6) any release would pose a risk to the public.  Plaintiff's appendix 7; doc. 13, p. 10.  In the amended extraordinary review order, only five reasons are provided:  (1) firearm used in the offense; (2) multiple victims; (3) trauma to the surviving victim; (4) vulnerability of the one victim, 17 year old girl; and (5) any release would pose a risk to the public.  Plaintiff's appendix 10; doc. 13, p. 13.

[3] Both of the orders were also presented by Plaintiff as an appendix to his amended complaint, filed as document 13.  *See* doc. 13, pp. 10-15.

[4] Plaintiff was charged as being "drunk" in 1969.  In 1973, he was charged with DWI and no driver's license.  In 1974, he was charged with having no valid driver's license and speeding.  In 1975, Plaintiff was charged with careless driving.  Doc. 15, p. 5.

by the rules and regulations while confined to the structured setting of a Correctional Institution" indicated Plaintiff's "propensity for criminal conduct." Plaintiff's appendix 8, 11 (doc. 13, pp. 11, 14).

The order also discussed Plaintiff's psychological evaluations. The Commission said:

> The Commission finds the Department of Corrections' record contains mental health impressions as reflected in the Psychological Evaluations dated October 18, 2002, that inmate Buckrem's mental status was unremarkable in that there were no indications of psychosis, cognitive or memory impairment, mood disorder, suicide risk, or lapses of judgment or insight. The evaluation states that inmate Buckrem underwent a psychological evaluation in 1985 prior to obtaining permission to marry. The Commission finds that in the evaluation that inmate Buckrem was diagnosed with "Mixed Personality Disorder with histrionic, antisocial, and immature features." The evaluation states that inmate Buckrem claims that he has not had difficulty controlling his anger for several years and points out the relatively low number of disciplinary reports he has obtained throughout his incarceration. The Commission finds that inmate Buckrem stated that the only reason he had requested to participate in the Stress and Anger Management group was to improve his chances of obtaining parole. The Commission notes that inmate Buckrem states that he was a "weekend" drinker during his early twenties, and that he continued to drink alcoholic beverages in prison.
>
> The evaluation states that regarding a propensity toward violence or assaultive behavior, there are no psychiatric factors that would appear to increase his risk of violent behavior. The evaluation states that while it is impossible to accurately predict future behavior with any degree of certainty, past behavior is considered to be the best predictor of future behavior.
>
> Based on these mental health impressions, the Commission finds and determines the inmate is still in need of evaluation, observation, and treatment.

Plaintiff's appendix 8 and 11 (doc. 13, pp. 11-12, 14-15). The next paragraph states:

> The Commission finds, in total, that the circumstances of [Plaintiff's] case represent to the Commission there still exists a doubt as to whether this inmate would be able to perform successfully under the conditions of

> parole supervision. The Commission is drawn to the conclusion that the available record does not support a positive finding that inmate Buckrem's release on parole would be compatible with his welfare and the welfare of society.

Plaintiff's appendix 9, 12 (doc. 13, pp. 12, 15).

Plaintiff provided the psychological evaluation report dated October 18, 2002, with his amended complaint. Plaintiff's appendix 22-23; doc. 13, pp. 25-26. The report concluded Plaintiff did not "demonstrate any symptoms of mental illness at [that] time." Plaintiff's appendix 23, doc. 13, p. 26. The psychologist also concluded her report by stating that Plaintiff's evaluation did not indicate that Plaintiff posed "a significant risk to society if he were to be released" and there were "no indications of any mental illness that could increase such a risk." *Id.*

The psychological evaluation was updated the following year, on July 22, 2003, as requested by the Parole Commission concerning Plaintiff's possible parole release. Plaintiff's appendix 24; doc. 13, p. 27. The report stated that there were two factual errors in the prior evaluation that should be corrected. First, the 2002 report had stated that Plaintiff "had three prior charges for Driving Under the Influence." *See* Plaintiff's appendix 22, doc. 13, p. 25. However, Plaintiff only had one DUI arrest. Plaintiff's appendix 24, doc. 13, p. 27. The second correction was in noting he "received his GED in 1986, not in 1992 as [previously] indicated . . . ." *Id.* The evaluation concluded by stating, "Other than the factual corrections noted above, the information noted in the report dated 10/18/2002 continues to reflect the mental health condition and needs of this inmate." *Id.*

After receiving the Commission's decision, Plaintiff filed a petition for writ of mandamus in state court on or about July 23, 2004, challenging the lawfulness of the suspension of this presumptive parole release date.  Doc. 15, pp. 7-8; Defendants' exhibit C.  The state court denied the petition, concluding that the Commission did not abuse its discretion in suspending the presumptive parole release date (permissible under § 947.18, Florida Statutes).  Doc. 15, pp. 9-10; Defendants' ex. C.  The state court also found that the Commission "articulated specific facts supporting its decision" and, thus, determined that Plaintiff was not entitled to mandamus relief.  Doc. 15, pp. 9-10.  Plaintiff filed a motion for rehearing in the Circuit Court.  Plaintiff's appendix 28-30, docs. 13, pp. 31-33.  One June 22, 2005, the circuit court denied Plaintiff's motion, a motion in which Plaintiff had argued "that the factual basis for the Commission's action is false."  Plaintiff's appendix 31, doc. 13, p. 34.  The state court found "no legal or factual reason to recede from its previous order."  *Id.*  On June 27, 2005, Plaintiff appealed that order in the First District Court of Appeal.  Doc. 15, p. 10.  Plaintiff's appeal, in the form of a petition for writ of certiorari, was denied on the merits on February 20, 2006.[5]  Doc. 15, p. 10; Plaintiff's appendix 33-42, doc. 13, pp. 36-45.  Plaintiff initiated this action in the fall of 2006, alleging fraudulent information was used by the Commission in suspending his presumptive parole release date, resulting in a denial of his due process rights.  Doc. 15, p. 12; Plaintiff's appendix 43, doc. 13, p. 46.  Plaintiff's motion for rehearing or clarification was denied.  Plaintiff's appendix 44-51, doc. 13, pp. 47-51.

---

[5] Buckrem v. Florida Parole Commission, 923 So.2d 1166 (Fla. 1st DCA, Feb. 20, 2006) (Table).

Defendants are Frederick B. Dunphy and Tena Pate, two members of the Florida Parole Commission. Doc. 15, p. 1. Plaintiff's claims in this case are founded on the Due Process Clause and the Cruel and Unusual Punishment Clause.

**Analysis**

### Due Process

Florida's parole system leaves the decision of whether or not to grant parole "to the discretion of the [Parole] Commission . . . ." Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir.), *cert. denied*, 479 U.S. 830 (1986), *citing* Moore v. Florida Parole & Probation Comm'n, 289 So. 2d 719 (Fla. 1974). "There is no constitutional right to parole in Florida" as it is a discretionary process. Jonas, 779 F.2d at 1577, *citing* Hunter v. Florida Parole & Probation Comm'n, 674 So. 2d 847, 848 (11th Cir. 1982); Paschal v. Wainwright, 738 F.2d 1173, 1179-80 (11th Cir. 1984)(holding that the decision about whether or not to grant parole is within the ultimate discretion of the Parole Commission).[6] In Hunter v. Florida Parole & Probation Commission, the Court rejected a claim that the Commission improperly calculated a presumptive parole release date and, thus, violated due process, holding that because there was no liberty interested in parole, there was no due process violation. Hunter, 674 F.2d at 848.

The Due Process Clause exists to protect a liberty interest. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). Due process is not required if there is no liberty interest. Because inmates have no right to parole under Florida law, *see* Jonas, *supra*, Plaintiff cannot assert the deprivation of a liberty interest.

---

[6] "It is the intent of the Legislature that the decision to parole an inmate from the incarceration portion of the inmate's sentence is an act of grace of the state and shall not be considered a right." FLA. STAT. § 947.002(5).

However, even though a state's parole statutes are discretionary and do not confer a liberty interest in parole, a parole board's "discretion is not unlimited." <u>Monroe v. Thigpen</u>, 932 F.2d 1437, 1442 (11th Cir. 1991).  "A parole board may not engage in 'flagrant or unauthorized action.' "  <u>Monroe</u>, 932 F.2d at 1442 (citation omitted).  The court held in <u>Monroe</u> that, notwithstanding the lack of a protected liberty interest in being granted parole, a parole board may not knowingly rely on "false information in determining whether to grant parole."  *Id.*  Knowing reliance upon false information is an arbitrary and capricious act which violates the Due Process Clause.  *Id.*  Nevertheless, while "the use of false information in a parole file can be a due process violation, prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim."  <u>Jones v. Ray</u>, 279 F.3d 944, 946 (11th Cir. 2001), *citing* <u>Monroe</u>, 932 F.2d at 1442.  In <u>Ray</u>, the Court held that a prisoner must come forward with evidence showing the "false information relied on by the Board."  <u>Jones v. Ray</u>, 279 F.3d at 946; *see also* <u>Slocum v. Georgia State Bd. of Pardons and Paroles</u>, 678 F.2d 940, 942 (11th Cir.), *cert. denied* 459 U.S. 1043 (1982).

Defendants deny that fraudulent information was used in arriving at the decision to suspend Plaintiff's presumptive parole release date.  Doc. 15, p. 14.  They state: "The allegedly false information Plaintiff claims was placed in his prison file by the Defendants is the statement in the Parole Commission's Extraordinary Review that Plaintiff is 'still in need of evaluation, observation and treatment.' "  Doc. 15, p. 13.  Defendants contend that the conclusion that Plaintiff is in need of continued observation is their opinion and not factual information.  Doc. 15, p. 14.  Defendants state that their opinion is based on the Psychological Evaluations from 1985 and 2002, which finds

Plaintiff was diagnosed with "Mixed Personality Disorder with histrionic, antisocial, and immature features." Doc. 15, p. 14; Plaintiff's appendix 11-12. The evaluations were from records obtained from, and created by, the Florida Department of Corrections. *Id.* Defendants argue that Plaintiff's differing opinion that he does not need further evaluation and that he is suitable for parole does not demonstrate that the Defendants have based their decisions on false information. Doc. 15, p. 15.

Defendants further point out that they have *not* claimed Plaintiff is "in need of psychiatric treatment based on a psychiatric problem," but rather that Plaintiff needs further treatment concerning the use of alcohol and further observation for violence. Doc. 15, p. 16. For example, Plaintiff admitted that he was intoxicated when he committed the underlying offenses, and he continued "to drink and manufacture alcoholic beverages even after [being] incarcerated." *Id.* Further, the Defendants noted Plaintiff has received "disciplinary reports for possession of weapons and spoken threats after being incarcerated . . . ." *Id.* Moreover, "despite participating in a Stress and Anger Management group," Plaintiff admitted he did so only to improve his chances of obtaining parole and not out of a realized need to improve himself. *Id.*, at 16-17. It also seems apparent that the Commission believed that Plaintiff's violent crimes showed a propensity for violence, and that Plaintiff has not adequately accepted responsibility for that propensity as evidenced by Plaintiff's own description of the crime. *Id.*, at 16; *see* doc. 13, p. 64.

It is plainly obvious that Plaintiff has suffered a great disappointment in the change of his presumptive parole release date since he had reason to believe that he would be placed on parole in 2004. It is also true that the second psychological

evaluation was consistent with the first evaluation.  But the opinion of the psychologist is not binding upon parole commissioners.  It is only some evidence for their consideration.  The decision of the Defendants shows that they accurately summarized the psychological evaluations and considered them.  The ultimate decision, which requires a subjective determination of whether Plaintiff would be successful on parole, is theirs to make.  The Commission determined that Plaintiff needed further treatment and supervision, believing that Plaintiff was not yet ready for a successful release on parole.  This was not "false" psychological evidence, but simply the ultimate parole conclusion which must be made in every case.  Plaintiff has not shown that the decision was based upon false evidence as intended by Monroe v. Thigpen, *supra*.  Summary judgment should be granted to Defendants on this due process claim.

**Cruel and Unusual Punishment**

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).  Only those conditions which deny one "the minimal civilized measure of life's necessities" or are "grossly disproportionate to the severity of the crime warranting punishment" are grave enough to violate the Eighth Amendment's prohibition against cruel and unusual punishment.  Rhodes, at 347, 101 S.Ct. 2392.  Prison conditions may be restrictive and harsh, but that is "part of the penalty that criminal offenders pay for their offenses against society."  *Id.*

Plaintiff's lawful sentence is life imprisonment.  "[T]he denial or postponement of parole is merely a disappointment rather than a punishment of cruel and unusual proportions."  Damiano v. Florida Parole and Probation Com'n, 785 F.2d 929, 933 (11th

Cir. 1986), *citing* Craft v. Texas Board of Pardons & Paroles, 550 F.2d 1054 (5th Cir.1977).  The suspension of Plaintiff's presumptive parole release date was a great disappointment for Plaintiff, but it was not an Eighth Amendment violation.

**Claim three**

Plaintiff argues that the Parole Commission no longer functions under the same "philosophy of parole" that existed previously, and that this violates due process.  Doc. 12.  He argues that "[p]arole is an obsolete philosophy under the state system."  Doc. 20, p. 3.

Parole was abolished in Florida over twenty years ago.  The group of parole-eligible prisoners in Florida, both in and out of prison, has diminished over these years.  There is a residual number of Florida prisoners like Plaintiff, serving a parole-eligible life sentence, who will continue to seek parole.  Inmates who are good parole risks probably have been paroled.  Some have violated parole and are back in prison.  Whether the denial of parole for others is the result of the diminution of the pool of inmates who are good parole risks, or is a change of parole philosophy, is debatable.  Parole philosophy may change over time, but that does not change the fundamental problem, that there is no due process liberty interest in parole in Florida.  Summary judgment should be granted to Defendants on this claim as well.

**Recommendation**

Accordingly, it is **RECOMMENDED** that the summary judgment motions, docs. 15 and 16, be **GRANTED,** and judgment be **ENTERED** in favor of Defendants on all of Plaintiff's claims.

**IN CHAMBERS** at Tallahassee, Florida, on August 14, 2008.

                     **s/   William C. Sherrill, Jr.**
                     **WILLIAM C. SHERRILL, JR.**
                     **UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**